#2    ☐ **ORIGINAL**

CLAUDE CASTRO & ASSOCIATES PLLC
Claude Castro, Esq. (CC 2101)
*Attorneys for Plaintiff Vic Lotan*
444 Madison Avenue, Suite 500
New York, New York 10022
Tele.  (212) 810-2710
Fax    (212) 355-0195

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV 3134**

| | |
|---|---|
| VIC LOTAN, derivatively on behalf of Horizon Properties LLC, and derivatively on behalf of 137 And 138 Realty LLC, | **COMPLAINT** |
| Plaintiff, | Docket No. 14-CV-____ |
| For the Judicial Dissolution of 137 AND 138 REALTY LLC. | |
| Defendant, | |
| -and- | |
| HORIZON PROPERTIES LLC, 137 EAST 25TH STREET ASSOCIATES LLC, NEW 137 AND 138 REALTY LLC, VIC LOTAN, JAMES K. COLEMAN, and BEHZAD NEHMADI, a/k/a BEN NEHMADI, | |
| Additional Defendants. | |

Plaintiff Vic Lotan ("Lotan" hereinafter), derivatively on behalf of Horizon

Properties LLC ("Horizon LLC"), and derivatively on behalf of 137 And 138 Realty LLC

("137 Realty LLC"), by his attorneys, Claude Castro & Associates PLLC, as and for his

Complaint alleges, upon information and belief, as follows:

## JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2.     There is complete diversity of citizenship between Lotan and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.     Venue is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

4.     Upon information and belief Lotan is a citizen, resident and domiciliary of Israel and the owner of 44.3962% membership interest in Horizon LLC.

5.     Upon information and belief, Nehmadi is a citizen of the United States, a resident and domiciliary of California and the owner of a 55.6038%[1] membership interest in Horizon LLC.

6.     Upon information and belief, Horizon LLC is a New York limited liability company, which owns a 79.5% membership interest in 137 Realty LLC, and whose members are Nehmadi and Lotan.

7.     Upon information and belief, 137 Realty LLC is a New York limited liability company, which owns the premises located at and known as 137 East 25th Street and 138 East 26th Street, New York, New York (collectively the "Premises"), and whose members are Horizon LLC, 137 Associates LLC and New 137 Realty LLC.

---

[1] Nehmadi has alleged that he exchanged a 0.5% membership interest in Horizon LLC for a 0.5% membership interest in 137 Realty LLC but has not explained the status of the 0.5% interest in Horizon LLC that appears to be unaccounted for.

8.    Upon information and belief, 137 Associates LLC is a New York limited liability company, which owns 20% membership interest in 137 Realty LLC, and whose members are Coleman and Nehmadi.

9.    Upon information and belief, Coleman is a citizen of the United States, a resident and domiciliary of Connecticut and the owner of a 100% membership interest in 137 Associates LLC.

10.    Upon information and belief, New 137 Realty LLC is a New York limited liability company, which owns a 0.5% membership interest in 137 Realty LLC, and whose sole member is Nehmadi.

11.    Upon information and belief, Nehmadi is a citizen of the United States, a resident and domiciliary of California and the owner of a 100% membership interest in New 137 Realty LLC.

12.    Upon information and belief, the Operating Agreement of 137 Realty LLC provides that 137 Realty LLC has two (2) co-managers, one appointed by Horizon LLC and one appointed by 137 Associates LLC.

13.    Upon information and belief, New 137 Realty LLC is the co-manager appointed by Horizon LLC.[2]

14.    Upon information and belief, Coleman is the co-manager appointed by 137 Associates LLC.

---

[2] As is noted above, Nehmadi is the sole member of New 137 Realty LLC and effectively acts as Co-Manager of 137 Realty LLC.

15.    Upon information and belief, on or about January 29, 2004, 137 Realty LLC borrowed the sum of $15,000,000.00 from UBS Real Estate Investments Inc. (the "UBS Loan") as part of a refinance of the Premises, which was secured by a mortgage against the Premises which was due on or about February 11, 2014 (the "Mortgage").

16.    In or about early 2013, Lotan, Coleman and Arnold Mandel ("Mandel"), who at that time was the owner of 5.9195% membership interest in Horizon LLC and who subsequently sold and transferred that membership interest to Nehmadi, had discussed and agreed that 137 Realty LLC should extend and/or refinance the existing Mortgage, without borrowing any additional loan proceeds, at a lower rate of interest and at terms beneficial to 137 Realty LLC and its members.

17.    In furtherance of those discussions, Coleman contacted various banks and lending institutions and advised the members of 137 Realty LLC that he had obtained proposals and term sheets for the refinance and/or refinance of the  Mortgage at a lower rate of interest and upon terms that were very favorable to 137 Realty LLC and its members.

18.    Upon being advised of Coleman's efforts and the refinance proposals obtained by Coleman, Nehmadi advised Lotan, Coleman and Mandel that it was his position that unanimous consent of the members of 137 Realty LLC was required to extend and/or refinance the Mortgage and that he would not consent to any extension and/or refinance of the Mortgage even though the Mortgage was due by its own terms of February 11, 2014.

4

19.    In response to Nehmadi's refusal to consent to the extension and/or refinance of the Mortgage, Lotan, Coleman and Mandel advised Nehmadi that they did not want to take any additional loan proceeds from such an extension and/ or refinance and that their primary concern in seeking to extend and/or refinance the Mortgage was to avoid a default of the Mortgage and the continuation of business purpose of 137 Realty LLC.

20.    Nehmadi still refused to consent to an extension or refinance of the Mortgage, continued to assert that unanimous consent of all members of 137 Realty LLC was required, and again reaffirmed his refusal to allow the Mortgage to be extended and/or refinanced under any circumstance.

21.    Thereafter, Nehmadi sent a letter, dated November 18, 2013, which Nehmadi signed individually and not in any apparent capacity as a member or manager of any entity, to Lotan and Mandel, calling for the "prepayment" of the  Mortgage purportedly requiring Lotan "to begin taking the steps necessary to pre-pay the Mortgage on December 11, 2013, including making arrangements to have your proportionate share of the payoff amount transferred to [137 Realty LLC]."

22.    In the foregoing letter of November 18, 2013, Nehmadi also stated, inter alia, that "On November 12, 2013, the members of [137 Associates LLC], which owns 20 percent of [137 Realty LLC], voted unanimously to withhold approval on any request and/or attempt by [137 Realty LLC] to refinance the UBS Loan". No written evidence of such a vote was provided to Lotan.

5

23. Further, the foregoing letter of November 18, 2013, which was sent solely by Nehmadi and was not signed by Coleman, the co-manager of 137 Realty LLC, was the first indication that Coleman and 137 Associates LLC were no longer consenting to extend and/or refinance the Mortgage.

24. Nehmadi's letter of November 18, 2013 went on to state that:

> "[U]nder the terms of [137 Realty LLC's] operating agreement, which requires unanimous consent of its members to engage in a refinance of this nature, [137 Realty LLC] cannot under any circumstances refinance the UBS Loan and instead has no choice but to pay off the UBS Loan on or before its maturity date of February 11, 2014.
>
> Further, on November 12, 2013, the Co-Managers of [137 Realty LLC] — James Coleman and myself on behalf of [New 137 Realty LLC] — met and decided that it is in [137 Realty LLC's] best interest to pre-pay the UBS Loan on December 11, 2013 in order to realize the maximum amount of saving currently available."

25. Subsequently, Nehmadi sent a second letter dated December 3, 2013, which Nehmadi again signed individually and not in any apparent capacity as a member or manager of any entity, to Lotan with a copy to Mandel, again calling for capital to be transferred by Lotan to 137 Realty LLC for the "prepayment" of the Mortgage by December 11, 2013.

26. In his December 3, 2013 letter, Nehmadi stated, *inter alia*, that "I can only presume that your silence in response to my November 18, 2013 letter indicates your unwillingness and/or inability to make the requisite arrangements to have your proportionate share of the payoff amount transferred to [137 Realty LLC]" and "As I previously noted, any failure by you to have your proportionate share of the payoff

amount transferred to [137 Realty LLC] such that [137 Realty LLC] can pre-pay the UBS

Loan on December 11, 2013 will result in my — and, indeed, all of [137 Realty LLC's]

direct and indirect members' — incurrence of substantial losses and I will immediately

pursue any and all recourse available".

27.    In response to Nehmadi's foregoing letters of November 18, 2013

and December 3, 2013, counsel for Lotan sent a letter, dated December 6, 2013, to

Nehmadi with copies to all members of 137 Realty LLC, which stated, *inter alia*, "it is not

clear in what capacity you are sending these letters to Mr. Lotan" and "you refer to

certain 'decisions' made by you and others without any documentation confirming what

actions, if any, were taken, and under what authority such actions were taken".

28.    Lotan's counsel's letter of December 6, 2013 goes on to state that:

> "[T]he mortgage that you refer to in the Letters is
> current and can be extended or refinanced at much
> more favorable terms and at much lower rates of
> interest. **In fact, just two months ago, Jim
> Coleman advised Mr. Lotan and Mr. Mandel that
> he was in the process of obtaining commitment
> letters from several lenders to refinance the
> existing mortgage at much more favorable terms
> than the terms that you [Nehmadi] negotiated on
> behalf of [137 Realty LLC] and at much lower
> interest rates**.
>
> The 'decision' that you refer to in your Letters not to
> refinance the existing mortgage, in light of the current
> favorable interest rates, makes absolutely no
> business sense and has been clearly orchestrated by
> you for the sole purpose of prejudicing our client's
> [Lotan's] rights in [137 Realty LLC].  Be that as it may,
> your 'request' that our client [Lotan] 'pre-pay' his
> 'proportionate' share of the outstanding mortgage is
> totally improper and is not authorized by [137 Realty
> LLC's] Operating Agreement or the Agreement of
> [Horizon LLC].

7

First, I remind you that our client is a Co-Manager of [Horizon LLC]. **Thus, any capital call made on the members of [Horizon LLC] requires the consent of the "Managers" of [Horizon LLC], which includes Mr. Lotan. Mr. Lotan was not consulted about any capital call to be made on the members of [Horizon LLC] and did not consent to any such capital call.** I assume that you are aware that the only way to compel a member to contribute additional funds on behalf of a limited liability company is by way of a duly approved capital call. Here, [Horizon LLC] did not make any proper or lawful capital call. Thus, Mr. Lotan is under no obligation to comply with your 'request' that he contribute additional funds in the sums 'dictated' in your Letters." (emphasis added)

29.    In the letter of December 6, 2013, Lotan's counsel referred

Nehmadi to paragraph 2.1(b) of the Operating Agreement of Horizon LLC and

paragraph 3.2.1 of the Operating Agreement of 137 Realty LLC, which state in relevant

part:

Paragraph 2.1(b) of the Horizon LLC Operating Agreement:

"…**but in no event shall the total of Additional Capital Contributions exceed, in any one instance, ten (10%) percent of such Member's Initial Capital Contribution, and in the aggregate twenty-five (25%) of such Member's Initial Capital Contribution…**" (emphasis added)

Paragraph 3.2.1 of the 137 Realty LLC Operating Agreement:

"**The total additional Capital Contributions which the Managers may require the Members to contribute during the term of this Agreement shall not exceed, in any one instance, ten (10%) percent of such Member's Initial Capital Contribution, and in**

> **the aggregate twenty-five (25%) percent of
> such Member's Initial Capital Contribution.**"
> (emphasis added)

30.    Thus, Nehmadi's purported capital calls set forth in his letters of

November 18, 2013 and December 3, 2013, were unauthorized since Lotan, a Co-

Manager of Horizon LLC, was not consulted about such a capital call and did not

consent to such a capital call.  Moreover, these purported capital calls were also

improper since they violated the terms of the Operating Agreements of Horizon LLC and

137 Realty LLC.

31.    Clearly, paragraph 2.1(b) of the Horizon LLC Operating Agreement

and paragraph 3.2.1 of the 137 Realty LLC Operating Agreement prevent either

company from making capital calls in the amounts required to "pre-pay" the Mortgage

since the amount sought from Lotan exceeded ten (10%) of Lotan's initial Capital

Contribution (as well as the initial capital contributions of all other members or 137

Realty LLC) and  exceeded, in the aggregate, twenty-five (25%) of Lotan's initial Capital

Contribution (as well as the initial contributions of all other members of 137 Realty LLC).

32.    Lotan's counsel's letter of December 6, 2013 went on to state that:

> "I submit to you that it is your actions that are now
> preventing [137 Realty LLC] from taking advantage of
> the pre-payment savings of $182,962.72 referred to in
> your Letters. **You knew or should have known that
> neither [Horizon LLC] nor [137 Realty LLC] has
> the authority to compel the Members of their
> respective companies to make additional capital
> contributions in excess of the limits set forth in
> the Operating Agreements of those two
> companies**. However, if [137 Realty LLC] had
> refinanced the existing mortgage in a timely fashion,
> the pre-payment savings referred to herein above
> would have been realized by [137 Realty LLC]. **In the**

**alternative, Mr. Lotan suggested selling the premises. You rejected this suggestion as well.** Indeed, your misguided attempt to prevent the refinance or sale of the premises was clearly designed to damage Mr. Lotan and has been conduct that is not in the best interest of [137 Realty LLC]. Thus, your willful breach of your fiduciary duty and breach of your duty of good faith which requires you to act in the best interest of [137 Realty LLC] have now placed [137 Realty LLC] in the position of being unable to take advantage of the pre-payment savings and have further placed [137 Realty LLC] in the position of being unable to refinance the existing mortgage". (emphasis added)

33.    In response to Lotan's letter of December 6, 2013, Nehmadi's

counsel sent a letter, dated December 12, 2013, which states, *inter alia*, that:

"As an initial matter, so that there is no confusion on the issue, allow me to clarify that Mr. Nehmadi sent the November 18, 2013 and December 3, 2013 letters in his capacity as a member of [Horizon LLC] as well as on behalf of [137 Associates LLC] and [New 137 Realty LLC], with the unanimous support of the memberships of both of those entities.

...On November 12, 2013, the members of [137 Associates LLC], the owner of twenty percent (20%) of [137 Realty LLC], met and voted unanimously to withhold approval on any request and/or attempt by [137 Realty LLC] to refinance the UBS Loan. [New 137 Realty LLC] (which owns .5% of [137 Realty LLC]) has elected to take a similar position. As a result of these decisions, [137 Realty LLC] is precluded from refinancing the UBS Loan.

Contrary to your assertion, the decision not to refinance the UBS Loan is premised upon...what is in their [Nehmadi and Coleman] best interests as well as being in the best interest of [137 Realty LLC] taking into account all the facts and circumstances.

\*        \*        \*

10

> …in the absence of your client's [Lotan's] contribution of his proportionate share of the payoff of the UBS Loan, they [Nehmadi and Coleman] will have no alternative but to pursue an acquisition of the UBS Loan through a special purpose entity that they would form and own."

34.    Lotan's counsel responded to the foregoing letter of December 12, 2013 by sending a letter to Nehmadi's counsel, dated December 19, 2013, which stated, *inter alia*, that:

> "At the outset, please be advised that we strenuously disagree with your assertion that the Operating Agreement of [137 Realty LLC] requires the unanimous consent of its members in order to extend the existing mortgage. We note that our client [Lotan] (together with Jim Coleman and Arnold Mandel) did not request a refinance of the mortgage and did not request that any additional debt be placed on the premises. They requested only that the existing mortgage be extended at lower interest rates. We again reiterate that Mr. Nehmadi's refusal to allow [137 Realty LLC] to extend the Mortgage or the refinance the Mortgage on the same terms is a blatant breach of his fiduciary obligation to [137 Realty LLC] and its members both in his capacity as Co-Manager and as a member of [137 Realty LLC].
>
> **As we have indicated previously, as an alternative, our client [Lotan] is prepared to proceed with the sale of [137 Realty LLC's] property in order to pay off the mortgage and avoid a default thereunder.** As Mr. Nehmadi is well aware, the market conditions at this time would allow [137 Realty LLC] to either extend the Mortgage at extremely favorable rates or sell the building in one of the highest markets in New York City history. However, we are told that Mr. Nehmadi refuses to do either of the foregoing and, instead, is forcing [137 Realty LLC] into default and possible foreclosure.

What we find equally troubling is the fact that Jim Coleman had advised our client and Arnold Mandel several months ago that he was in the process of obtaining either an extension of the Mortgage or a refinance of the Mortgage. He also indicated to Mr. Lotan and Mr. Mandel that he would strenuously object to Mr. Nehmadi's stubborn refusal to extend or refinance the mortgage. Indeed it was in reliance on Mr. Coleman's and Mr. Mandel's representations that they would oppose Mr. Nehmadi's attempt to frustrate [137 Realty LLC's] ability to extend the Mortgage that Mr. Lotan did not undertake any prior separate action. Now, several months later, we are told by Mr. Nehmadi that Mr. Coleman has unilaterally changed course and has apparently chosen to participate in Mr. Nehmadi's scheme to damage Mr. Lotan.

**Please be further advised that should Mr. Nehmadi and/or Mr. Coleman proceed with the acquisition of the Mortgage for their own account, as you suggest in your letter, such action will be deemed to be the ultimate breach of fiduciary duty. What is pretty clear is that Mr. Nehmadi intends to obtain the Mortgage, directly or indirectly, for his own account and for the purpose of commencing a foreclosure action so as to obtain the Property for his own account.** Furthermore, it is also clear that it is Mr. Nehmadi's intention to enforce a default rate of interest against [137 Realty LLC], of which he is a Co-Manager, for the purpose of diluting Mr. Lotan's interest in [137 Realty LLC] and destroy [137 Realty LLC's] sole asset. Should this occur, such outrageous conduct will merit the award of punitive damages." (emphasis added)

35.    Thereafter, in an effort to extricate himself from this toxic business relationship, pursuant to Article VI Section 6.2(c) of the Horizon LLC Operating Agreement, Lotan served Nehmadi with a "Shotgun Notice", dated December 20, 2013, which "constitutes [Lotan's] offer to purchase [Nehmadi's] entire 55.6038% Membership Interest in [Horizon LLC]" (the "Shotgun Notice").

12

36.   In response to Lotan's Shotgun Notice of December 20, 2013, and in a further attempt to frustrate Lotan's efforts to avoid further disputes and litigation, Nehmadi sent a letter, dated January 10, 2014, to Lotan which stated that the Shotgun Notice is purportedly "incurably defective" due to, *inter alia*, the following:

> "Pursuant to Article VI, Section 6.2(e) of the Operating Agreement, any purchase or sale of any Membership Interest is subject to the terms of the Agreement. Article VI, Section 6.2(l) of the Operating Agreement states that 'no sale or exchange of any Membership Interest or other disposition covered by this Article may be made except with the consent of a Majority-In-Interest if the Membership Interest sought to be sold or exchanged or other disposition, would, in the opinion of counsel for [Horizon LLC] result in termination of [Horizon LLC] under Section 708 of the Code.' Since, as set forth in the annexed opinion letter of Goldberg Weprin Finkel Goldstein LLP, transfer of my 55.6038 percent interest in [Horizon LLC] to you or your transfer to me of your 44.3962 percent interest in [Horizon LLC] would result in termination of [Horizon LLC] under Section 708 of the Code, no such transfer can be made absent such consent. I do not consent to the sale proposed in your 'Shotgun Notice' and I am entitled unconditionally to withhold that consent pursuant to Article VI, Section 6.2(h) of the Operating Agreement. As such, your 'Shotgun Notice' is a nullity and you are prohibited from purchasing my interest or selling your interest in [Horizon LLC] pursuant to Article VI, Section 6.2(l) of the Operating Agreement."

37.   Attached to Nehmadi's letter of January 10, 2014 was a letter from Andrew W. Albstein, Esq. ("Albstein") of Goldberg Weprin Finkel Goldstein LLP ("GWFG") dated January 9, 2014, in which Albstein purports that he and GWFG "have acted as general counsel to [Horizon LLC]."

38.     Despite the foregoing statement made by Albstein, who has acted as personal and corporate counsel for Nehmadi for numerous years, Lotan, a member and Co-Manager of Horizon LLC, was never asked to give his consent to the retention of Albstein and GWFG as counsel or general counsel for Horizon LLC.

39.     As such, at no time whatsoever did Lotan consent to the retention of Albstein and GWFG as counsel and/or general counsel for Horizon LLC and at no time did Lotan consent to retain Albstein and GWFG to perform any legal services on behalf of Horizon LLC.

40.     Notwithstanding the foregoing, Albstein and GWFG purported to act as counsel and/or general counsel for Horizon LLC, apparently upon Nehmadi's unauthorized request and without authority since they were at all times aware that Nehmadi could not unilaterally act on behalf of Horizon LLC without Lotan's consent, and obtained an "opinion from Troutman Sanders LLP and have relied upon it in rendering our opinion".

41.     In the letter of January 9, 2014, Albstein and GWFG provided a legal opinion, as the purported general counsel of Horizon LLC, that "[a] sale of either member's entire Membership Interest in Horizon pursuant to the Shotgun Buy-Sell provision will result in a termination of [Horizon LLC] as a partnership for U.S. federal income tax purposes pursuant to Section 708 of the Code".

42.     The foregoing letter of Albstein and GWFG, dated January 9, 2014, went on to state that "[a] termination of [Horizon LLC] as a partnership for U.S. federal income tax purposes will result in a termination of [137 Realty LLC] as a partnership for U.S. federal income tax purposes pursuant to Section 708 of the Code."

14

43.    With the foregoing letter from Albstein and GWFG as its basis,

Nehmadi commenced an action against Lotan seeking, *inter alia*, to have the Shotgun

Notice judicially declared null and void (the "Shotgun Litigation").

44.    In response to Albstein's letter of January 9, 2014, Lotan sent a

letter, dated January 23, 2014, in which Lotan objected to the purported representation

made by Albstein that GWFG was the general counsel of Horizon LLC.

45.    In his January 23, 2014 letter, Lotan stated, *inter alia*, that:

> "Your claim that Goldberg Weprin 'acted as general
> counsel to [Horizon LLC] is false. As Co-Manager of
> [Horizon LLC], any decision to retain your firm as
> counsel, let alone general counsel, would have to
> have been consented to by me. I have never
> consented to your firm's retention as general counsel
> to [Horizon LLC] and have never seen any retainer
> letter or other agreement authorizing your firm to act
> as general counsel for [Horizon LLC]. Indeed, I know
> of no legal services that your firm performed on behalf
> of [Horizon LLC].
>
> **Moreover, your firm has a substantial conflict of
> interest which would ethically prohibit your firm
> from representing [Horizon LLC] in any capacity.**
> Indeed, you have confirmed at the recent arbitration
> proceeding that your firm represents [Nehmadi] with
> regard to his interest in [Horizon LLC] and in [137
> Realty LLC], represents [Coleman] in connection with
> his interest in [137 Realty LLC], represents
> [Nehmadi's] interest in [new 137 Realty LLC], and
> represents [Nehmadi] and various of his other entities
> in unrelated matters.
>
> **What is all too clear is that you have taken
> instructions from your client, [Nehmadi], to create
> an opinion letter on behalf of [Horizon LLC]
> knowing full well that your firm is not general
> counsel for [Horizon LLC] and knowing full well
> that your firm was not authorized to act as
> counsel for [Horizon LLC] under any
> circumstances. If you had read the Operating**

**Agreement of [Horizon LLC], which I assume you did, you would have confirmed that [Nehmadi], as Co-Manager, did not have the authority to retain your firm as 'general counsel' to [Horizon LLC] without my consent since all decisions made on behalf of [Horizon LLC] require the consent of both Co-Managers, and did not have the authority to retain your firm for any purpose without my consent. Yet, you chose to issue an opinion letter without authority.**

Your actions are unethical and I hereby demand that you retract the opinion letter that you issued as 'general counsel' for [Horizon LLC] forthwith. I hereby reserve all of my rights and remedies as a result of your unauthorized conduct." (emphasis added)

46.     Since GWFG and Albstein acted as personal and corporate counsel for Nehmadi and various of his entities, and also acted as counsel for Coleman and other entities in which Coleman is involved, Nehmadi and Coleman knew or should have known that Albstein and GWFG had a substantial conflict of interest which prevented GWFG and Albstein from representing the interests of Horizon LLC or 137 Realty LLC.

47.     Indeed, Nehmadi's and/or Coleman's retention of Albstein and GWFG is a further breach of fiduciary duty since Nehmadi and Coleman, as experienced real estate operators, knew or should have known that as a result of the substantial conflict of interest that Albstein and GWFG had as result of their multiple representation, Horizon LLC and 137 Realty LLC did not and could not receive independent legal advice.

48.    In fact, the legal advice sought by Nehmadi and/or Coleman on behalf of Horizon and/or 137 Realty LLC was intended to benefit the personal interests of Nehmadi, Coleman and their respective entities, to the detriment of Horizon LLC, 137 Realty LLC and all of their respective members.

49.    By letter dated January 23, 2014 submitted by Lotan to the Court, Lotan consented to the preliminary injunction sought by Nehmadi in the Shotgun Litigaton with regard to the enforcement of the Shotgun Notice, pending a determination of what Nehmadi and Coleman intended to do with regard to the Mortgage which was to become due by its own terms on February 11, 2014.

50.    On February 10, 2014, (a) not having heard  from Nehmadi and Coleman as to the status of the Mortgage, (b) following proceedings in the Shotgun Litigatoin, and ( c) one (1) day before the Mortgage was to mature and become due, Lotan sent another letter to Nehmadi and Coleman stating, *inter alia*, that:

> "...I once again request that [137 Realty LLC] extend its existing Mortgage at the favorable rates and terms currently available or, alternatively, that [137 Realty LLC] sell the Premises, its sole asset.  As you well know, [Coleman] previously advised me and [Mandel] that he had obtained favorable responses from several banks to refinance and/or extend the existing Mortgage at the same monetary amount at lower interest rates.  Indeed, [Coleman] and [Mandel] have repeatedly joined with me to request for more than a year that the existing Mortgage be refinanced and/or extended in order to take advantage of the current favorable interest rates and in order to avoid a default and foreclosure of the Premises, the sole asset of [137 Realty LLC].

17

**Clearly, it is in the best interest of [137 Realty LLC], [137 Associates LLC], [Horizon LLC] and [New 137 Realty LLC] that the existing Mortgage be extended or refinanced since [137 Realty LLC] does not have the ability to pay the existing Mortgage by way of a capital call or by use of existing funds when the Mortgage becomes due. Significantly, paragraph 3.2.1 of the [137 Realty LLC] Operating Agreement establishes limits to the capital contributions that can be compelled from members of that entity and, as a result, there is no authority for [137 Realty LLC] to compel capital contributions from its members in an amount sufficient to pay the outstanding Mortgage on the Premises.**

*    *    *

**Again, I request that [137 Realty LLC] extend its existing Mortgage at the favorable rates and terms currently available or, alternatively, that [137 Realty LLC] sell the Premises, its sole asset. A sale of the Premises, which would be at a minimum $500-600 per square foot in the current market, would insure a pay off of the existing Mortgage and a valuable return on investment for the members of [137 Realty LLC].** In the event that [Nehmadi] and [Coleman] continue to cause deadlock among the members of [137 Realty LLC] by refusing to refinance or extend the existing Mortgage and by refusing to sell the Premises, I will have no choice but to seek a judicial dissolution of [137 Realty LLC] and damages against [Nehmadi] and [Coleman] personally." (emphasis added)

51.    Lotan received no response from either Nehmadi or Coleman to his letter of February 10, 2014.

52.    Thereafter, by letter, dated February 12, 2014, after the due date of the Mortgage, Nehmadi's counsel informed the Court, *inter alia*, that the parties were purportedly making "a joint request" that the litigation be referred to mediation and that

"our client and [Coleman] (the other co-manager of [137 Realty LLC]) have taken

affirmative steps to assure that the mortgage did not go into default because of Mr.

Lotan's refusal to contribute his proportionate share to pay it off."

53.    Neither Nehmadi nor Coleman advised Lotan that they had

unilaterally formed a new entity, presumably comprised solely of Nehmadi and Coleman

as members, to purchase the Mortgage for their own account.

54.    Lotan discovered the foregoing as a result of a letter, dated

February 12, 2014, sent by counsel for Nehmadi to Lotan's counsel which stated, *inter*

*alia,* that:

> "In order to protect their interests and avoid a default
> as a result of your client's failure to pay his
> proportionate share, Mr. Nehmadi and Mr. Coleman
> were forced to pursue an acquisition of the UBS Loan
> through a special purpose [entity] they have formed
> known as Tristate Capital Funding LLC ["Tristate
> LLC"]. Tristate LLC closed the acquisition on
> February 12, 2014 which included it taking a blanket
> assignment from UBS, including the existing
> mortgage and the note."

55.    Notwithstanding any of the foregoing, the Mortgage was not

extended or refinanced as requested by Lotan and is now in default. A review of the

New York City's Registrar's records confirms that Nehmadi's current litigation counsel

represent Tristate Capital Funding LLC and that the Mortgage was assigned to Tristate

Capital Funding LLC by assignment dated February 7, 2014.

56.    Accordingly, the Mortgage, which has a principal sum due of

approximately $13,000,000.00, is now past due, is in default , is now subject to

foreclosure sale and is incurring a default rate of interest of eleven (11%) percent

together with additional penalties and late charges.

57.     Upon information and belief, Nehmadi and Coleman are the members of Tristate LLC, the new holder of the Mortgage and are now represented by Nehmadi's litigation counsel with regard to the Mortgage.

58.     As a result of the foregoing, 137 Realty LLC has an approximate $13,000,000.00 liability which is now due and owing which 137 Realty LLC has no means to satisfy. As such, 137 Realty LLC is insolvent as a matter of fact and law.

59.     Nehmadi and Coleman, as the members and owners of Tristate LLC, the new holder of the Mortgage, have now placed themselves in the position of being able  to commence a foreclosure action against 137 Realty LLC at any time since the Mortgage is overdue and in default and have also placed themselves in the position of being able to charge 137 Realty LLC the default rate of interest set forth in the Mortgage, together with penalties and late charges.

60.     As the Co-Managers of 137 Realty LLC, which is now the debtor to Tristate LLC, and as co-members and owners of Tristate LLC, which is now the holder of the defaulted Mortgage, Nehmadi and Coleman have insurmountable conflicts of interest that prevent them from meeting their fiduciary duties to 137 Realty LLC and its members.

61.     As a result of Nehmadi and Coleman's unilateral and self dealing actions, they have complete control over 137 Realty LLC, as the Co-Managers thereof, and have the power to foreclose against 137 Realty LLC at any time, as the members and owners of Tristate LLC, the holder of the Mortgage.

62.    As a result of the foregoing, Nehmadi, Coleman and New 137 Realty LLC have caused and  created an incurable and insurmountable conflict of interest , have breached their fiduciary duty to 137 Realty LLC and its members by their unilateral improper and self-dealing actions, and have created the circumstances which would allow Nehmadi and Coleman, as members and owners of Tristate LLC, to have the power to foreclose on the Premises and deprive 137 Realty LLC of its sole asset for their own benefit.

## AS AND FOR A FIRST CAUSE OF ACTION

63.    Lotan repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 59 of the Complaint, as if fully set forth herein.

64.    As set forth above, Lotan is a member of Horizon LLC, which is a member of 137 Realty LLC, and Lotan brings this action derivatively on behalf of Horizon LLC and 137 Realty LLC.

65.    Paragraph 2.3 of 137 Realty LLC's Operating Agreement provides as follows:

> "Purpose.  The Company is organized solely to purchase, acquire, buy, sell, own, trade in, hold, develop, lease, manage, subdivide, and otherwise deal in and with the real property and improvements thereon at the Premises [which is defined in the Operating Agreement as '137 East 25th Street and 138 East 26th Street, New York, New York'; i.e. the property owned by 137 Realty LLC] and to do any and all things necessary, convenient, or incidental to that purpose."

66.    Pursuant to 137 Realty LLC's Operating Agreement, 137 Realty LLC is duly authorized to borrow money and enter into loan and mortgage transactions. In fact, 137 Realty LLC took a purchase money mortgage when it purchased the

Premises, which mortgage was refinanced twice since the initial purchase of the Premises.

67.     As set forth above, the UBS Loan and Mortgage was due by its own terms on February 11, 2014 in the approximate principal sum of $13,000,000.00.

68.     Upon information and belief, the Premises have a market value in excess of $40,000,000.00.

69.     As is noted above, Coleman negotiated and obtained several proposals to extend or refinance the UBS Loan and Mortgage at lower interest rates and on better terms and conditions.

70.     Thus, even though 137 Realty LLC could have extended and/or refinanced the UBS Loan and Mortgage, as a result of the actions and Nehmadi and Coleman, 137 Realty LLC was effectively prohibited and prevented from either extending or refinancing the Mortgage.

71.     Accordingly, 137 Realty LLC has a Mortgage in the approximate amount of $13,000,000.00 which is overdue and in default solely by the actions of Nehmadi and Coleman.

72.     Consequently, 137 Realty LLC is insolvent and unable to pay its debt. Accordingly, 137 Realty LLC cannot continue to carry out or achieve the purpose for which it was created, which was to purchase, acquire, hold, develop, lease and manage the Premises.  Thus, dissolution is the only viable remedy and 137 Realty LLC must be judicially dissolved for the benefit of all members.

73.     Since the Co-Managers of 137 Realty LLC have refused to extend or refinance the Mortgage so as to allow 137 Realty LLC to continue to carry out the purpose for which it was created, the only alternative that would allow 137 Realty LLC to preserve its asset is for 137 Realty LLC to sell its asset and avoid foreclosure.

74.     As noted above, Nehmadi and Coleman, as the Co-Managers of 137 Realty LLC, refused Lotan's request that the Premises be sold in order to avoid foreclosure and in order to preserve the asset of 137 Realty LLC.

75.     Since the Co-managers of 137 Realty have refused to act in the best interest of 137 Realty LLC and since the actions of the Co-Managers of 137 Realty LLC have effectively rendered 137 Realty LLC insolvent, Lotan has commenced this action derivatively in order to protect the interests of all members of 137 Realty LLC.

76.     Based on the foregoing, Lotan derivatively seeks a judgment of judicial dissolution pursuant to New York Limited Liability Company Law § 702.

## AS AND FOR A SECOND CAUSE OF ACTION

77.     Lotan repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 73 of the Complaint, as if fully set forth herein.

78.     The relationship of the members of Horizon LLC and 137 Realty LLC is one of fiduciaries of one another which owe a loyalty to the limited liability companies' interests.

79.     As such, Nehmadi and Coleman have a fiduciary obligation to the other members of 137 Realty LLC not to engage in self-dealing and to avoid any conflict in which the fiduciary's personal interest conflicts with those to whom the fiduciary owes a duty of loyalty.

23

80.    By reason of the foregoing, there is an actual justiciable controversy existing between the parties with regard to the unilateral conduct and actions of Nehmadi, Coleman and New 137 Realty LLC.

81.    Based on all of the foregoing, Lotan derivatively seeks a declaratory judgment declaring that, by reasons of their unilateral conduct and actions, Nehmadi, Coleman and New 137 Realty LLC (i) have breached their fiduciary duty for failing to loyally act in the best interest of 137 Realty LLC and its members and for engaging in blatant self-dealing, (ii) have created an incurable and  insurmountable conflict of interest by acquiring the Mortgage for their own account as the members and owners of Tristate LLC and that  (iii) as a result, Nehmadi and Coleman cannot continue to act as the Co-Managers of 137 Realty LLC.

82.    This flagrant conflict of conflict of interest is unquestionably demonstrated by the undisputed fact that, as the members and owners of Tristate LLC, Nehmadi and Coleman have the power to commence a foreclosure action against 137 Realty LLC at any time and that as the Co-Managers of 137 Realty LLC, Nehmadi and Coleman would then have the sole power to refuse to defend against sucha foreclosure action, thereby placing 137 Realty LLC's sole asset in jeopardy.

83.    Lotan has no adequate remedy at law.

### AS AND FOR A THIRD CAUSE OF ACTION

84.    Lotan repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 80 of the Complaint, as if fully set forth herein.

85.    Based on all of the foregoing, Nehmadi and Coleman have breached the covenant of good faith and fair dealing.

24

86.    As a result of the foregoing breach of the covenant of good faith and fair dealing, Lotan derivatively seeks damages on behalf of 137 Realty LLC for any and all losses to 137 Realty LLC's assets, any default rate of interest or other penalties incurred by 137 Realty LLC and the legal fees incurred for the prosecution of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

87.    Lotan repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 83 of the Complaint, as if fully set forth herein.

88.    Based on all of the foregoing, Lotan derivatively seeks the removal of Nehmadi, Coleman and New 137 Realty LLC as Co-Managers of 137 Realty LLC for cause based on their breach of fiduciary duty, their breach of the covenant of good faith and fair dealing, the incurable and insurmountable conflict of interest that they have cause, and their inability to effectively and neutrally manage the affairs of 137 Realty LLC.

## AS AND FOR A FIFTH CAUSE OF ACTION

89.    Lotan repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 85 of the Complaint, as if fully set forth herein.

90.    As a result of Nehmadi and Coleman's actions, the Premises, which represent 137 Realty LLC's sole asset, is in danger of being materially injured or destroyed.

91.    Accordingly, Lotan derivatively seeks the appointment of a temporary receiver to manage the affairs of 137 Realty LLC during the pendency of this action and the dissolution of 137 Realty LLC.

WHEREFORE, Third-Party Plaintiff Vic Lotan, individually and derivatively on behalf of Horizon Properties LLC and on behalf of 137 And 138 Realty LLC, demands judgment as follows:

A.   Judicial dissolution of 137 Realty LLC;

B.   A declaratory judgment declaring that, by reasons of their unilateral and self dealing conduct and actions, Nehmadi, Coleman and New 137 Realty LLC (i) have breached their fiduciary duty for failing to loyally act in the best interest of 137 Realty LLC and its members and for engaging in blatant self-dealing, (ii) have created an incurable and  insurmountable conflict of interest by acquiring the Mortgage as the members and owners of Tristate LLC and (iii) as a result, cannot continue to act as the Co-Managers of 137 Realty LLC;

C.   A judgment against Nehmadi and Coleman as a result of their  breach of the covenant of good faith and fair dealing for damages on behalf of 137 Realty LLC for any and all losses to 137 Realty LLC's assets, reimbursement of any default rate of interest or other penalties incurred by 137 Realty LLC and for reimbursement of all legal fees incurred in connection with the prosecution of this action;

26

D.  A judgment removing Nehmadi, Coleman and New 137 Realty LLC as Co-Managers of 137 Realty LLC for cause based on their breach of fiduciary duty ,incurable and  insurmountable conflict of interest and inability to effectively and neutrally manage the affairs of 137 Realty LLC;

E.  The appointment of a temporary receiver to manage the affairs of 137 Realty LLC during the pendency of this action and the dissolution of 137 Realty LLC;

F.  Punitive damages in amount to be determined at trial; and

G.  Such other and further relief as the Court may deem just, proper and equitable under the circumstances.

Dated: New York, New York
       April 30, 2014

CLAUDE CASTRO & ASSOCIATES PLLC

By: _____
Claude Castro, Esq. (CC 2101)
*Attorneys for Plaintiff Vic Lotan*
444 Madison Avenue, Suite 500
New York, New York 10022
(212) 810-2710

## VERIFICATION

STATE OF NEW YORK    )
                            ) ss.:
COUNTY OF NEW YORK )

        VIC LOTAN, being duly sworn, hereby deposes and says:

        I am the Plaintiff in the within action.  I have read the foregoing Complaint and know the contents thereof.  The same is true to my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

                                                Vic Lotan

Sworn to before me this
30ᵗʰ day of April, 2014

Notary Public

**CLAUDE CASTRO**
**Notary Public, State of New York**
**No. 314770231**
**Qualified in New York County**
**Commission Expires**

28

Docket No. 14-CV-_____
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

VIC LOTAN, derivatively on behalf of Horizon
Properties LLC, and derivatively on behalf of
137 And 138 Realty LLC,

Plaintiff,

For the Judicial Dissolution of
137 AND 138 REALTY LLC,          Defendant,

     -and-

HORIZON PROPERTIES LLC, 137 EAST 25th
STREET ASSOCIATES LLC, NEW 137 AND 138
REALTY LLC, VIC LOTAN, JAMES K. COLEMAN,
and BEHZAD NEHMADI a/k/a BEN NEHMADI,

Additional Defendants.

_____

COMPLAINT

_____

Claude Castro & Associates PLLC
*Attorneys for Plaintiff Vic Lotan*
444 Madison Avenue, Suite 500
New York, New York 10022
(212) 810-2710
